UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROLANDO ELIAS MORENO,

    Plaintiff,

v.                                            Case No:   8:14-cv-1536-T-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

This cause is before the Court on Plaintiff, Rolando Elias Moreno's Complaint (Doc. 1) filed on June 25, 2014. Plaintiff, Rolando Elias Moreno seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

**I.  Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

**A.  Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§423(d)(2), 1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

**B. Procedural History**

On August 15, 2011, Plaintiff filed an application for disability and disability insurance benefits asserting a disability onset date of November 1, 2008. (Tr. p. 129-130). Plaintiff's application was denied initially on December 20, 2011, and denied upon reconsideration on April 10, 2012. (Tr. p. 60, 71). A hearing was held before Administrative Law Judge John D. McNamee-Alemany on August 1, 2013. (Tr. p. 38-50). The ALJ issued an unfavorable decision August 29, 2013. (Tr. p. 24-31). On April 25, 2014, the Appeals Council denied Plaintiff's request for review, but did consider additional medical records from Sai Medical Center dated September 3, 2008 to September 13, 2013. (Tr. p. 1-5). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on June 25, 2014. This case is now ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc.18).

**C. Summary of the ALJ's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Commissioner of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013)[1] (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. Ap. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the Social Security Act's insured status requirements through December 31, 2013. (Tr. p. 26). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2008, the alleged onset date. (Tr. p. 26). At step two, the ALJ found that the Plaintiff suffered from the following severe impairments: diabetes mellitus, heart disease with continuation of smoking, and disorders of the back citing (20 C.F.R. 404.1520(c)). (Tr. p. 26). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). (Tr. p. 27). At step 4, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform a full range of light work as defined in 20 C.F.R. § 404.1567(b). (Tr. p. 27). The ALJ determined that Plaintiff is capable of performing his past relevant work, and this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. p. 30). The ALJ found Plaintiff's past relevant work was as a Salesperson, Auto Dealership, which is considered light work with a specific vocational preparation ("SVP") of six, citing to the Dictionary of Occupational Titles ("DOT"). The ALJ concluded that Plaintiff has not been under a disability as defined in the Social Security Act from November 1, 2008 through the date of the decision. (Tr. p. 31).

**D. Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II. Analysis**

Plaintiff raises three issues on appeal. As stated by Plaintiff they are:

1) The ALJ's RFC determination is unsupported by substantial evidence because the ALJ erred in weighing and evaluating the medical evidence of record.

2) The ALJ's credibility determination is unsupported by substantial evidence because he ALJ erred in analyzing the required factors when assessing Plaintiff's credibility.

3) The ALJ's Step 4 determination is unsupported by substantial evidence.

**A.  Whether the ALJ Erred in Weighing and Evaluating Medical Evidence**

Plaintiff argues that the ALJ erred by failing to give adequate weight to the opinion of treating physician Dr. Nirmalan. Plaintiff asserts that the medical evidence of record does support the limitations set forth by Dr. Nirmalan.  The Commissioner argues that the evidence of record fails to support Dr. Nirmalan's extremely restrictive RFC assessments.  Specifically, the Commissioner asserts that the ALJ recognized that Plaintiff was diagnosed with sciatica in 2008, but sought very little treatment for his back pain.

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986).  The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997).  Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.,* 877 F.Supp.2d 1254, 1265 (M.D. Fla. 2012).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted).  The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite

his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

"Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians unless 'good cause' is shown. *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009) (citing 20 C.F.R. §404.1527(d)(1), (2), (5); and *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). A doctor's opinion may be discredited when it is contrary to or unsupported by the evidence of record, or the opinion is inconsistent with the doctor's own medical records. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)). "Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error." *Id.* (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

On July 14, 2011, Plaintiff saw Nadarajah Nirmalan, M.D. for leg and back pain. (Tr. p 271). Plaintiff's pain was a 7 on a scale of 1 to 10. (Tr. p. 271). Plaintiff's pain was constant. (Tr. p. 271). Dr. Nirmalan prescribed medication. (Tr. p. 272). Plaintiff saw Dr. Nirmalan on July 28, 2011, August 10, 2011, September 13, 2011, October 11, 2011, November 11, 2011 and November 29, 2011. (Tr. p. 264-269). The majority of the medical records are illegible with the exception that Dr. Nirmalan continued to prescribe medication to Plaintiff which included Percocet. (Tr. p. 265).

On October 25, 2010 [2], Dr. Nirmalan completed a Residual Functional Capacity Questionnaire. (Tr. p. 254-255). Dr. Nirmalan determined that Plaintiff was diagnosed with degenerative disc disease with a fair prognosis. (Tr. p. 254). Dr. Nirmalan found Plaintiff's symptoms to constantly interfere with attention and concentration in performing work-related tasks. (Tr. p. 254). Dr. Nirmalan found plaintiff would need to lie down during an 8-hour workday, and would need longer breaks than normal. (Tr. p. 254). Dr. Nirmalan determined that Plaintiff could walk 1/2 of a city block; could sit and/or stand for 5 minutes at one time; could sit for 2 hours total in an 8-hour work day and stand/walk for 1 hour total in an 8-hour workday; needs a job that allows for shifting positions at will, need to be able to take unscheduled breaks every 1/2 hour during an 8-hour workday and these breaks would last 10-15 minutes; could lift less than 10 lbs. occasionally, and 10 lbs. or more never; would miss 3 to 4 days of work per month; was not a malingerer; and was not capable of working an 8-hour day, 5 days a week on a sustained basis. (Tr. p. 254-255).

On May 21, 2013, Dr. Nirmalan completed a second Residual Functional Capacity Questionnaire. (Tr. p. 276-278). Dr. Nirmalan's diagnosis was spinal stenosis, atherosclerosis, and heart disease with a poor prognosis. (Tr. p. 276). Plaintiff had the symptoms of chronic back pain and fatigue and these symptoms constantly interfered with Plaintiff's attention and concentration which was required to perform simple work-related tasks. (Tr. p. 276). Dr. Nirmalan found Plaintiff's medications cause the side effects of dizziness and stomach upset which would interfere with his capacity to work. (Tr. p. 276). Dr. Nirmalan found Plaintiff to need to recline or lie down during an 8-hour workday, and need longer breaks than normal. (Tr. p. 276). Dr. Nirmalan determined that Plaintiff could walk less than 1 city block; could sit or

---

2  The date on the form is unclear, and the year could be incorrect as it appears that Dr. Nirmalan began treating Plaintiff in February of 2011, "I have treated [this patient] since 2/14/11.". (See, Tr. p. 278).

stand/walk for 15 minutes at one time; could sit and/or stand/walk for 0 hours in an 8-hour day; would need to be permitted to shift positions at will; would need unscheduled breaks every 15-20 minutes with the breaks lasting 10 minutes; could lift less than 10 lbs. frequently and less than 10 lbs. occasionally but never lift 20 lbs. or more. (Tr. p. 277). Dr. Nirmalan found Plaintiff to be likely to be absent from work more than 4 times per month, and that Plaintiff was incapable of working an 8-hour day, 5 days a week. (Tr. p. 277). Dr. Nirmalan stated that he had been treating Plaintiff since February 14, 2011 and that Plaintiff had these limitations since February 14, 2011. (Tr. p. 278).

The ALJ reviewed Dr. Nirmalan's Physical Residual Functional Capacity Assessments of October 2010 and May 2013. (Tr. p. 30). The ALJ noted that Dr. Nirmalan found Plaintiff to be "fair" overall, yet assessed Plaintiff as having severe limitations which the ALJ found to be inconsistent with the record evidence. (Tr. p. 30). The ALJ noted that Dr. Nirmalan found Plaintiff to be "fair" in May 2010 but became "poor" in May 2013 without any medical evidence to support the worsening of Plaintiff's condition. (Tr. p. 30). The ALJ found Plaintiff to have "benign clinical findings throughout the record" which did not support Dr. Nirmalan's findings of the extreme limitations and inability of Plaintiff to maintain a normal work schedule.

The ALJ discussed Plaintiff's back pain and noted Plaintiff was diagnosed with sciatica in 2008 which was confirmed by an MRI showing a small central disc herniation at L5-S1 with mild ventral effacement of the thecal sac, as well as a moderate sized herniation at L4-5. (Tr. p. 29). The ALJ found that Plaintiff sought very little treatment for back pain. (Tr. p. 29). Due to the lack of medical evidence, the ALJ obtained a consultative examination which found Plaintiff walked with a normal gait, could walk on heels and toes without difficulty, was able to perform a full squat, had a normal stance, did not use assistive devices, appeared in no acute distress, could get

on and off the examination table without assistance, but did have a reduced range of motion in the lumbar spine but was otherwise was essentially normal. (Tr. p. 29). The ALJ noted that Plaintiff did seek emergency room treatment for severe back pain in 2012, however that back pain was related to kidney stones.  (Tr. p. 29).

Plaintiff argues that Dr. Nirmalan's medical records support the limitations in his Residual Functional Capacity Questionnaires, citing to records from September 3, 2008 through September 13, 2013.  (Tr. p. 391-433). These records, however, were not before the ALJ when he made his decision, but were submitted only to the Appeals Council. (Tr. p. 5, Appeals Council received the following additional evidence: "Medical records from Sai Medical Center, dated September 3, 2008 to September 13, 2013").  A claimant is generally permitted to present new evidence at each state of her administrative process. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007), and 20 C.F.R. §404.900(b).

Plaintiff did not raise the issue that the Appeals Council erred in denying review based upon the new evidence submitted to it.  Rather, Plaintiff argues that the ALJ erred in failing to find that Dr. Nirmalan's findings as to Plaintiff's limitations were not supported by the record partially based upon the medical records that were provided to the Appeals Council only.  When a plaintiff does not appeal the Appeals Council's decision to deny review, then a court need not consider new evidence that was provided only to the Appeals Council to determine if the ALJ's decision was supported by the record. *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998). A court must look "at only the evidence that was before the ALJ." *Id*.  If Plaintiff had challenged both the ALJ's decision and the decision of the Appeals Council to deny review based on the new evidence submitted to it, then the Court would consider whether the new evidence "renders the denial of benefits erroneous."  *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 832 (11th Cir.

2011). Therefore, the Court will not consider the medical records that were submitted to the Appeals Council only.

Beyond the records submitted to the Appeals Council, the only other records which Plaintiff cites to in support of Dr. Nirmalan's limitations are those of Mehul Shah, M.D. Plaintiff saw Dr. Shah on May 21, 2008 for pain in his right flank, sciatica, and lower back pain. (Tr. p. 212). Plaintiff returned on July 9, 2008, for a pinched nerve in his buttocks. (Tr. p. 211). Plaintiff returned on August 20, 2008 for a pain medication refill for leg pain, and was assessed with sciatica and leg numbness. (Tr. p. 210). Dr. Shah reviewed Plaintiff's MRI dated August 24, 2008, which showed a small central disc herniation at L5-S1 with mild ventral effacement of the thecal sac. (Tr. p. 213). At L4-5, the MRI showed a moderate sized central and left posterolateral disc herniation with moderate ventral effacement of the thecal sac and moderate secondary central spinal stenosis. (Tr. p. 213). On August 27, 2008, September 10, 2008, and October 29, 2008 Plaintiff returned for medication adjustments and refills. (Tr. p. 207-210).

The ALJ considered Dr. Nirmalan's Physical Residual Functional Capacity assessments but did not find that the medical records supported the severe limitations found by Dr. Nirmalan. Dr. Shah did diagnose Plaintiff with back pain, sciatica and numbness in the legs, however his medical records spanned only May through August 2008 which only show back pain and sciatica for a three month period, but do not establish that Plaintiff had back pain that continued through the dates of Dr. Nirmalan's assessments and do not show any limitations from Plaintiff's symptoms. Dr. Nirmalan's medical records that were before the ALJ began in July 2011 and ended in November 2011, only 4 months. Plaintiff does not indicate, and the Court cannot find much in these records that support any limitations let alone the severe limitations found by Dr. Nirmalan such as Plaintiff being able to sit or stand/walk for only 15 minutes at one time and being

able to sit and/or stand/walk for 0 hours in an 8-hour day. In addition, the ALJ did review the consultative examiner's report. (Tr. p. 256-262). Munir Rizkallah, M.D. conducted an examination of Plaintiff on November 11, 2011. (Tr. p. 256-262). Dr. Rizkallah found Plaintiff not to be in any acute distress, his gait was normal, he could walk on heels and toes without difficulty, he could squat, his stance was normal, he used no assistive devices, he needed no help getting on and off examination table, and he was able to rise from a chair without difficulty. (Tr. p. 257). Dr. Rizkallah's report supports the ALJ's decision that Plaintiff was not as limited as set forth in both of Dr. Nirmalan's Physical Residual Capacity Questionnaires.

The ALJ reviewed the medical records that were a part of the record. The records before him support his finding that Plaintiff was not as limited as set forth by Dr. Nirmalan's two assessments. Dr. Nirmalan's medical records before the ALJ do not support the limitations he set forth in both of his assessments. Dr. Shah's records diagnose Plaintiff with back pain, numbness and sciatica, but these records were for only a short period of time and do not set forth any limitations due to Dr. Shah's diagnosis. The medical records as to back pain are sparse and as such the ALJ obtained a consultative examination. Dr. Rizkallah's medical report does not support the severe limitations set forth by Dr. Nirmalan in his two assessment. Therefore, the ALJ properly discredited Dr. Nirmalan's two assessment as being unsupported by the record evidence. Substantial evidence supports the ALJ's decision to give little weight to Dr. Nirmalan's two assessments, and therefore, the ALJ did not err.

**B. Whether the ALJ Erred in his Credibility Determination**

Plaintiff argues that the ALJ erred in his credibility determination that the effects of Plaintiff's symptoms are not "entirely credible." (Tr. p. 27). Plaintiff contends that the ALJ should not have used Plaintiff's attempt to work or Plaintiff's attempt to start his own business

after his stent was implanted to discredit Plaintiff. Plaintiff argues that these endeavors should bolster his credibility as he attempted to work even though he was in constant pain. Plaintiff also asserts that the ALJ erred in discrediting Plaintiff when the ALJ relied on one instance when Plaintiff reported that he walked along the beach. Plaintiff contends he went to the doctor to report leg discomfort from walking along the beach. Plaintiff argues that the ALJ failed to evaluate Plaintiff's daily activities, and that Plaintiff takes Percocet which is a strong pain medication.

The Commissioner asserts that the ALJ reviewed Plaintiff's testimony and found inconsistencies between Plaintiff's testimony at the hearing and various reports in the medical records. The Commissioner contends that Plaintiff testified that he was unable to work due to back pain, but the medical records show that he lost his job in January 2009 due to the economy. The ALJ noted that Plaintiff stated he could not walk for extended periods of time, yet Plaintiff reported that he walked on a beach. The Commissioner asserts that the ALJ reviewed the medical evidence noting very little evidence to support Plaintiff's contentions of disabling back pain.

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)). After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate

reasons for doing so. [citations omitted] Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson v. Barnhart*, 284 F.3d at 1225. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)). The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno v. Astrue*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. p. 27). The ALJ first notes that the records contain statements from Plaintiff that he stopped working for economic reasons and not due to his disabilities which lead to the ALJ discrediting Plaintiff's allegations of medical disability. (Tr. p. 28). Plaintiff testified that he could no longer work as a car salesman because he could not take walking in the heat and the pain was unbearable. (Tr. p. 45). However, in January 2009, Plaintiff reported to Jeffrey R. Witt, M.D., a cardiologist, that Plaintiff lost his job due to economic difficulties. (Tr. p. 247). In July 2009, Plaintiff reported to Dr. Witt that after having a "fair number of martinis and dancing," Plaintiff went the emergency room for diaphoretic (excessive sweating) and an evaluation, and myocardial infarction was ruled out. (Tr. p. 245). Plaintiff reported that he was "going to be opening a used car dealership in Tampa." (Tr. p. 245). Plaintiff testified that he was unable to walk for extended periods of time, but in a letter to Dr.

Shah, it states that he was walking the beach and developed some leg problems. (Tr. p. 206). Plaintiff's testimony as to his abilities differed from his reports to his physicians. The ALJ cited to the record to show that Plaintiff overstated his limitations and these statements as to limitations were not credible based upon the conflicting reports to his physicians.

Even though the ALJ found Plaintiff to have overstated his limitations, he did not stop his review. The ALJ carefully examined the medical records provided by Plaintiff. (Tr. p. 28). As stated above, the medical records as to Plaintiff's back pain were sparse, and did not support Plaintiff's claims of limitations and did not support Dr. Nirmalan's assessments.[3] Plaintiff did not seek much medical treatment for his back pain which supports the ALJ's determination as to credibility. In addition, the consultative examiner, Dr. Rizkallah did not find that Plaintiff had the severe limitations as set forth in his testimony. The ALJ set forth explicit and adequate reasons for discrediting Plaintiff's alleged limitations. The ALJ considered Plaintiff's daily activities, the nature and intensity of pain and other symptoms, and the treatment or measures taken by the claimant for relief of symptoms. Therefore, the Court finds that substantial evidence supports the ALJ's credibility finding, and the ALJ did not err in evaluating Plaintiff's credibility.

**C.  Whether ALJ Erred at Step 4 Determination**

Plaintiff argues that the ALJ erred in finding that Plaintiff can perform his past relevant work as a sales person at an auto dealership. Plaintiff argues that the ALJ's RFC and credibility findings were erroneous, therefore the ALJ's Step 4 finding was not supported by substantial evidence because the RFC did not include all of Plaintiff's limitations. Plaintiff also asserts that the ALJ did

---

3 The Court recognizes that if Plaintiff was able to rely on the new evidence submitted to the Appeals Council, the outcome may have been different. However, the Court is constrained by the law in the Eleventh Circuit to review only the evidence submitted to the ALJ unless Plaintiff raises a claim that the Appeals Council erred in denying review based on the new evidence. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 832 (11th Cir. 2011).

not utilize the vocational expert properly, and failed to clarify whether Plaintiff could perform his past relevant work. The Commissioner responds that the ALJ obtained the testimony of a vocational expert to classify Plaintiff's past relevant work, and Plaintiff's counsel had the opportunity at the hearing to question the vocational expert to elicit further testimony.

A plaintiff bears the burden of showing that she can no longer perform her past relevant work as she actually performed it, or as it is performed in the general economy. *Waldrop v. Comm'r. of Soc. Sec.*, 379 F. App'x. 948, 953 (11th Cir. 2010). (citing *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986). Even though a plaintiff has the burden of showing she can no longer perform her past relevant work, the Commissioner has the obligation to develop a full and fair record. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). To develop a full and fair record, an ALJ must consider all of the duties of that past relevant work and evaluate a plaintiff's ability to perform the past relevant work in spite of the impairments. *Levie v. Comm'r of Soc. Sec.*, 514 F. App'x. 829, 831 (11th Cir. 2013). A plaintiff is the primary source for vocational documents, and "statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." *Id*. at *3.

The ALJ found that Plaintiff was capable of performing the full range of light work. The ALJ obtained the testimony of a vocational expert to classify Plaintiff's prior position as light work. (Tr. p. 42). The Court has determined that the ALJ did not err in his evaluation of the medical opinion evidence and did not err in determining Plaintiff's credibility. The ALJ compared the demands of Plaintiff's past relevant work as an auto sales person to Plaintiff's RFC and determined Plaintiff was able to return to his past relevant work. At step 4 of the sequential evaluation, an ALJ in not required to obtain the testimony of a vocational expert, however, a

vocational expert may be required at step 5 to determine if a plaintiff's RFC will allow him to do other work in the economy after meeting his burden of showing that he cannot return to his past relevant work.  *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) (citing *Chester v. Bowen*, 792 F.2d 129, 131-32 (11th Cir. 1986)). The ALJ found at step 4 that Plaintiff is able to return to his past relevant work as an auto sales person. Therefore, the ALJ did not err in failing to question the vocational expert further, and did not err in determining that Plaintiff could return to his past relevant work as a sales person in an auto dealership.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on May 5, 2015.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties